804 F.2d 462
 35 Ed. Law Rep. 950
 Alan HURLBUT and Linda Hurlbut, Appellants,
v.
Wyman SCHEETZ, Dale Schulz, John Bobb, Jr., Mrs. Eugene
Emineth and Bill Hickle, in their official
capacities as members of the Center
School District, No. 18, Appellees,
v.
NORTH DAKOTA STATE BOARD OF PUBLIC SCHOOL EDUCATION.
 No. 86-5200.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1986.
Decided Oct. 31, 1986.
 
 Kathryn L. Dietz, Bismarck, N.D., for appellants.
 Gary R. Thune, Bismarck, N.D., for appellees.
 Before FAGG, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BOWMAN, Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 The issue on this appeal is whether the district court fashioned a proper remedy for the violation of the "one-person, one-vote" principle in school board elections in a lightly populated rural North Dakota school district. The court, faced with the inability of Center School District, No. 18 (CSD), to put in place a constitutional election system, mandated at-large voting with the restriction that candidates should be grouped on the ballots by residence and one candidate elected from each of five geographic areas within the district. We affirm.
 
 
 2
 CSD assumed its present form in 1966 as a result of consolidation involving all or part of thirteen separate school districts. As a condition of the reorganization, the rural districts that were losing their identities insisted on some guarantee of appropriate representation on the school board. Thus, when five voting districts were established, each to elect one board member, geography was an important consideration. The city of Center, population 1,069, constitutes one voting district, while the remaining predominantly rural portions of CSD, population 1,008, are divided into four voting districts with populations ranging from 168 to 397 each.
 
 
 3
 In 1985, the Hurlbuts, residents of Center, initiated this litigation claiming their school board votes were not being accorded equal weight with those of rural CSD residents in violation of the equal protection clause of the fourteenth amendment. See Hadley v. Junior College Dist., 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). CSD essentially conceded the unconstitutionality of its voting structure, and the district court entered partial summary judgment in favor of the Hurlbuts. The court, however, delayed consideration of the remedy. CSD then submitted to its patrons a plan calling for at-large elections but retaining geographic residency requirements with one board member to be selected from each of the five previously existing voting districts. A majority of all CSD voters approved, but the issue failed because it did not gain a majority among voters in the Center voting district, as required by North Dakota law governing school reorganizations. See N.D.Cent.Code Sec. 15-27.3-19 (Supp.1985).
 
 
 4
 CSD submitted this same plan to the district court as a proposed remedy, while the Hurlbuts sought five single-member voting districts of mathematical population equivalence. The Hurlbuts did not propose boundaries for the districts, but they indicated two would consist solely of Center residents, two would consist solely of rural residents, and one would encompass both types of residents. The district court adopted the CSD plan, and the Hurlbuts appeal.
 
 
 5
 The Hurlbuts concede the CSD plan is constitutional. E.g., Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967). They do not contend that the plan results in discrimination against any racial, economic, or political group. See Chapman v. Meier, 420 U.S. 1, 19, 95 S.Ct. 751, 762, 42 L.Ed.2d 766 (1975). The Hurlbuts argue simply that a district court, in exercising its discretion to select a remedy from competing constitutional voting plans, must give preference to a plan involving single-member districts absent a "singular combination of unique factors" justifying a different result. Connor v. Finch, 431 U.S. 407, 415, 97 S.Ct. 1828, 1834, 52 L.Ed.2d 465 (1977) (quoting Mahan v. Howell, 410 U.S. 315, 333, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973)); see also East Carroll Parish School Bd. v. Marshall, 424 U.S. 636, 639, 96 S.Ct. 1083, 1085, 47 L.Ed.2d 796 (1976) (per curiam) (single-member districts preferred over at-large voting absent "unusual circumstances"). The remedy selected by the district court in this case was inappropriate, the Hurlbuts conclude, because the district court did not identify and rely on the required unique factors. We disagree.
 
 
 6
 Supreme Court decisions make clear that significant state and local policies may be considered by a district court in fashioning an appropriate voting remedy, so long as the court articulates precisely the legitimate local concerns leading it to vary from the use of single-member voting districts. See Chapman, 420 U.S. at 20 & n. 14, 26-27, 95 S.Ct. at 762 & n. 14, 765-66. The district court here expressly accorded respect to the policy of "insuring representation of the interests of voters in the former school districts that agreed to become a part of" CSD. Hurlbut v. Scheetz, Civ. No. A1-85-118, slip op. at 7 (D.N.D. Apr. 7, 1986). The district court's plan was the choice both of the CSD administration and of a majority of CSD voters. Furthermore, the plan is in line with the voting practices in other school districts in North Dakota. At-large voting with geographic residency requirements is the dominant method in the state for electing school board members, and nearly seventy-five percent of the school districts use some form of at-large voting.
 
 
 7
 Preserving the distinct viewpoints of scattered geographical areas within a single governmental entity has been recognized by the Supreme Court as a sufficient justification for use of geographic residency requirements in conjunction with an at-large voting scheme. See Dusch, 387 U.S. at 116-17, 87 S.Ct. at 1556. Nothing in the Court's other decisions suggests that when, as here, legitimate local concerns have been articulated, those concerns must yield in court-ordered voting plans to a preference, announced in dissimilar circumstances, for single-member voting districts.
 
 
 8
 In summary, the at-large voting element of the district court's plan affords equal voting strength to each school district patron in conformity with the "one-person, one-vote" principle. The court's geographic residency requirements reflect the school district's historical commitment to heterogeneous representation on the school board. Both components of the district court's plan have been held by the Supreme Court to pass constitutional muster. See Hadley, 397 U.S. at 58, 90 S.Ct. at 796. Thus, we cannot say the district court abused its discretion in fashioning this voting remedy.
 
 
 9
 We affirm.
 
 
 
 *
 The HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the Second Circuit, sitting by designation